# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

JUAN MIGUEL HURTADO    )
SESSAREGO,                )
                      )
      Plaintiff,        )
                      )
v.                    )
                      )      Case No.   CV414-209
CAROLYN COLVIN,       )
Acting Commissioner of    )
Social Security,         )
                      )
      Defendant.    )

## <ins>REPORT AND RECOMMENDATION</ins>

Juan Miguel Hurtado Sessarego ("Hurtado," *see* doc. 10 at 1) applied for Social Security Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) in 2010, alleging disability beginning in September 2009. Tr. 172-78.[1] Both applications were denied administratively, so his claims are now ripe for judicial review. Doc. 1.

---

[1] "Doc." citations use the docket and page numbers imprinted by the Court's docketing software. Those do not always line up with each paper document's printed pagination. "Tr." citations, on the other hand, use the page numbers in the bottom right corner of the administrative record, which is located on the docket at doc. 8.

# I. GOVERNING STANDARDS

In social security cases, courts:

> review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir.2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In response to the showing the claimant makes, the ALJ applies:

> a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe."[2]

---

[2] An ALJ may dismiss at step two if the alleged impairments do not meet the applicable severity or duration requirements, but claimants are not required to show very much because this step is "designed to screen out only clearly groundless claims," *Hinkley v. Astrue*, 2011 WL 2144624 at * 6 (S.D. Ga. May 31, 2011). It thus knocks

*Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment.[3] *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience.[4] *Id.* § 404.1520(a)(4)(v). An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a VE. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

---

out "those applicants whose medical problems could 'not possibly' prevent them from working." *Stratton v. Bowen*, 827 F.2d 1447, 1452 n. 9 (11th Cir. 1987) (quoting *Baeder v. Heckler*, 768 F.2d 547, 551 (3d Cir. 1985)).

[3] Here the claimant:

needs to meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

*Newsome v. Colvin*, 2014 WL 667800 at * 4 (S.D. Ga. Feb. 20, 2014).

[4] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to his past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x 878, 879 (11th Cir. 2015) (footnotes added).

"For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." 42 U.S.C. § 423(a)(1)(A) (2005). Hurtado agrees that he was last insured on December 14, 2014, and that his appeal requires a showing of disability on or before that last date. *Moore*, 405 F.3d at 1211; doc. 10 at 1 n. 1; *see also* 20 C.F.R. § 416.202 (SSI is needs-based, so it does not require insured status, but the definition of disability is the same as for DIB); *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).

## II. BACKGROUND

Hurtado initially reported that his highest level of education was a GED, Tr. 192, but at the January 31, 2012 hearing he testified that received a bachelor's degree in architecture in Peru. *Id.* at 87. He previously worked as a construction estimator. *Id.* at 60, 187, 197-98. Now (as of the hearing) 61 years old, he is saddled with a host of physical problems and traces many to a punch in the face that he received on the job in 2008. *Id.* at 59, 87, 90-91. Degraded vision and pain resulted,

and it did not improve through 2010, when stress and diabetes II afflicted him. *Id*. at 90, 281; doc. 10 at 2. That's when he quit working: "I was under a lot of stress and with a problem concentrating. So then I decided not to work any longer [at his estimator job,] the only thing I know how to do." Tr. 90.

He also has suffered, since then, from what he calls "flashing." Tr. 91. "It's kind of like lightning, like a white lightning bolt that appears and I can't really control it." *Id*. "When I experience that flashing, I have problems sleeping. When I am working, I see a lot of spots." *Id*. He says it's permanent and at the hearing it was happening "right now as we speak in my eyes. It's always there. It's permanently the flashing and black spots." *Id*. at 91-92; *see also id*. at 92 ("The main problem is on the left eye. It's not a severe pain but it's moderate."); *id*. at 92-93 (it comes on after about 2-3 hours of reading or TV watching; medication plus cold water "alleviates the burning sensation."); *id*. at 93 (it gives him headaches and nausea 2-3 times a week for 10-15 minutes at a time). When asked if he could work full-time now, he replied: "I would not be able to do any other job. It

would be very difficult because my whole life I've done the same type of work." *Id.* at 94. He elaborated: "My physical condition. My vision was my tool for working and my ear has totally made an imbalance in my life, not just for myself but for my wife as well." *Id.* at 95.

Dr. V.S. Sundaram, an otolaryngoloist, saw him in 2010 and found symptoms consistent with a diagnosis of chronic recurrent tinnitus[5] on the left more than his right ear; Eustachian tube obstruction, allergic rhinitis, acid reflux and a hearing impairment in his left ear. Tr. 460. The doctor's notes about a May 13, 2010 follow-up visit are, plaintiff concedes, illegible. Doc. 10 at 3 (citing Tr. 456). Hurtado cites to findings by Luis Villani, M.D., his other treating ophthalmologist, doc. 10 at 2-3, but he cites neither to support a net disability impairment.

In any event plaintiff claimed to the SSA that he was disabled as of September 2009, due to statutory blindness in eyes, brittle diabetes, hypertensive cardiovascular disease, hypertension, depression, anxiety,

---

[5] "Tinnitus is generally defined as a subjective sensation of sound, such as ringing or buzzing, in one or both ears. *Parham v. Johnson,* 126 F.3d 454, 455 (3d Cir.1997); *Varley v. Sec'y of Health & Human Services,* 820 F.2d 777, 778 n. 1 (6th Cir.1987); *Smith v. Harris,* 644 F.2d 985, 987 n. 2 (3d Cir.1981)." *Rumminger v. Astrue,* 2011 WL 6004078 at * 1 (M.D. Fla. Nov. 30, 2011).

and headaches. Tr. 51, 88, 191. The ALJ found that Hurtado "has the following severe impairments: history of bilateral injury to eyes with retinal tears, type II diabetes mellitus, hypertension, obesity, and headaches." Tr. 53. He cited the May 18, 2010 examination and tinnitus and hearing impairments. *Id.* He also noted an August 22, 2011 form completed by Hurtado's treating physician, Antonio Fim, M.D. Fim opined that claimant met Listing 2.07 (a SSA impairment severity benchmark).[6]

The ALJ then meticulously discussed Hurtado's ailments and impairments before determining that his "medically determinable impairments of anxiety and depression[,] considered singly and in combination, do not cause more than minimal limitation in [his] ability to perform basic mental work activities and are therefore non-severe." Tr. 54.[7] Hence, Hurtado did not have an impairment, or combination of them, that met or medically equaled the severity of at least one of the

---

[6]    The ALJ rejected that ultimate *conclusion* because it is reserved to the Commissioner. Tr. 53.

[7]    Again, "[t]he impairment must be severe, making the plaintiff unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy (42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511)." *Rumminger*, 2011 WL 6005286 at * 6.

Listing 2.07 impairments. *Id.* In that respect, the ALJ also did not find credible Hurtado's testimony "concerning the intensity, persistence and limiting effects of [his claimed] symptoms. . . ." Tr. 57. In fact "[t]he claimant was generally not credible." *Id.*

Hurtado's claim thus made it to step four, where the ALJ determined whether he had the RFC to perform his past relevant work. At the aforementioned hearing, the ALJ articulated his specific RFC findings to the VE, and incorporated (by establishing that the VE had heard Hurtado's testimony) Hurtado's factual assertions (sleeping problems, eyesight and reading problems, etc.). Tr. 96. The VE classified Hurtado's past work -- construction estimator -- as a skilled, sedentary job and opined that he could still perform it, and work like it. Tr. 59. The ALJ determined that to be the case and thus ruled Hurtado not disabled. *Id.*

## III. ANALYSIS

### A. Medical Listing 2.07.

Hurtado insists that the ALJ failed adequately to consider whether he met the SSA's Medical Listing 2.07 -- more specifically, that he

improperly considered the medical evidence and misdetermined plaintiff's RFC. Doc. 10 at 1, 6-12. Listing 2.07 requires Hurtado "to establish (1) disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and (2) hearing loss established by audiometry. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 2.07." *Newsome*, 2014 WL 667800 at * 1. As noted *supra*, Hurtado has the burden of proving that an impairment meets or equals a listed impairment. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). A lot goes into that. And the governing principles make clear that ALJs are not constrained to indulge in rote, blow-by-blow determinations:

> [t]o "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. 20 C.F.R. § 404.1525(a)-(d); *Wilson*, 284 F.3d at 1224. To "medically equal" a Listing, the medical findings must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a); *Wilson*, 284 F.3d at 1224. If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to the criteria of any listed impairment. *Id*. An impairment that meets *only some* of the criteria of a Listing, no matter how severely, does *not* qualify. 20 C.F.R. § 416.925(c)(3). The ALJ's finding as to whether a claimant meets a listed impairment *may be implied from the record*. *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir.1986). Furthermore, while

the ALJ must consider the Listings in making [his] disability determination, "it is not required that the [ALJ] mechanically recite the evidence leading to [its] determination." *Id.*

*Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 870 (11th Cir. 2012) (emphasis added). It is against that legal backdrop that plaintiff presents his bottom line here: The ALJ failed "to weigh all medical opinions and provide some indication why they are rejected." Doc. 10 at 7.

He did not. There is a wide range of functional loss encompassing Hurtado's condition, and the ALJ was authorized to weigh the differing medical opinions about it.[8] He thus properly considered and weighed the

---

[8] Hurtado complains of *one-ear* labyrinthine function loss. Some background:

Patients who lose labyrinthine function in both ears at the same time usually do not have the sustained sense of spinning or falling with nausea and vomiting as do patients with an acute loss of labyrinthine function from just one ear. Such severe symptoms arise from patients with a unilateral loss of function because even when the head is still there is an imbalance in the normally equal and even flow of sensory signals that come to the brain from each labyrinth. In contrast, patients who have a bilateral loss of function have no asymmetry of activity from the two labyrinths with the head still and hence do not have symptoms until they move. In fact, some patients who lose vestibular function, for example from the toxic effects of some antibiotics that must be used to treat some severe infections, are so sick otherwise and move so little that they are unaware of any balance or vision problems until they recover from their infection and start moving around more normally. So, while patients with a *unilateral* loss of function can be quite sick initially, the recovery and adaptation to their problem is usually more rapid and complete than that made by patients with a loss of vestibular function from both ears.

\*   \*   \*

neurology-consultation report from Dr. Morton S. Corin (neurologist), who examined Hurtado in November, 2009 and found his hearing "intact." Tr. 57 (citing Exh. 6F, Corin's report); Tr. 364. Hurtado suffered "no nausea, vomiting or diarrhea," Tr. 364, nor "muscle wasting, weakness or pain and no joint pain" or swelling. Tr. 363. Dr. Corin "projected [that claimant] will have reached maximum medical improvement from a neurologic standpoint." *Id.*

The same must be said of the ALJ's consideration of Thomas Thomas, MD's[9] May 2010 assessment -- that Hurtado: "has intermittent tinnitus and dizziness," Tr. 392, suffered "[n]o sensory or motor deficit," Tr. 394, and "would be able to do work-related mental activities involving understanding, memory and sustained concentration. There are no limitations to social interaction or adaptation." Tr. 395; Tr. 58. The

---

Maintaining balance can be extremely fatiguing for patients with vestibular loss and saps their energy. Nevertheless, most patients report that with time and physical therapy, they learn to live with their problem. They know it is still there, but they have developed compensatory strategies that allow them to cope successfully with their disability and to return to rich and productive lives.

http://www.hopkinsmedicine.org/neurology_neurosurgery/centers_clinics/vestibular/c onditions/bilateral_loss_of_labyrinthine_function.html

[9]    The Court confirms that "Thomas Thomas, MD" is the actual name of his consulting physician.   Tr. 391.

ALJ also considered other physical and mental-health based reports, including that of Hurtado's own doctor. *See* Tr. 56-58 ("His doctor never considered his loss of hearing with diabetes, because the doctor said it was not possible.").

Hurtado's contentions never get beyond the margins delineated in *Kalishek* above. For example, he complains that the ALJ ignored Dr. Fim's assessment: "The ALJ cannot essentially ignore the opinions from a treating specialist while suggesting that opinions from the [SSA's] consultants are more credible." Doc. 10 at 7. True, an ALJ must accord substantial weight to the opinion, diagnosis, and medical evidence of a treating physician -- unless there is good cause to do otherwise. *Lewis v. Callahan*, 125 F.3d 1336, 1440 (11th Cir. 1997); *Farkas v. Astrue*, 2012 WL 750547 at * 6 (M.D. Fla. Mar. 8, 2012). Good cause exists when:

> (1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir.2004). Therefore, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

*Farkas*, 2012 WL 750547 at * 6.

Also applicable here is the general rule that "the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006). Finally, nothing prevents the ALJ from relying on the opinions of non-examining sources when they do not conflict with those of examining sources. *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991).

But as noted, if good cause exists to reject a treating physician's opinion, or otherwise discount it in preference for a non-treating, consulting physician, then the ALJ's determination can be upheld. Still, he "must state with particularity the weight given different medical opinions, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)." *Bradley v. Colvin*, 2015 WL 6746782 at * 2

(N.D. Ala. Nov. 5, 2015).

That's what happened here. The ALJ properly discounted Dr. Fim's opinion in favor of those opinions from non-treating doctors, and he stated that with sufficient particularity. Tr. 53-54 (rejecting Fim's "form conclusion" because it was a conclusion, and "was not supported by the medical evidence record."). Though the ALJ did not expressly say so, his "not supported" rationale is easily implied from the record. For starters, Dr. Fim used a preprinted questionnaire but most of his findings are indecipherable, as if written by a child.[10] *See* Tr. 425-30. They largely consist of check-listed symptoms accompanied by vague words and non-words. After the preprinted word "Prognosis," for example, he wrote "Inconclusion" (inconclusive?). Tr. 426. After the question, "Does your patient have Miniere's Disease?" he wrote: "Inconcluson" (again, inconclusive?). *Id.* It makes sense to interpret these attempted

---

[10] It is no news to anyone that many doctors can't be bothered to write legibly, or deploy instant-notetaking software, to communicate their findings. This is a principal bane of social security cases. But as noted above, the plaintiff "is responsible for providing evidence from which the ALJ can make an RFC determination. 20 C.F.R. § 404.1545(a)(3)." *Riviere v. Colvin*, 2015 WL 1243243 at * 4 (S.D. Ala. Mar. 18, 2015). So if a patient cannot read his own doctor's records, then he *cannot* fling them at the SSA and the courts to divine meaning from it. Instead, *he* must demand clarity from *his* doctor.

words as "inconclusive" because Dr. Fim also wrote "one test vestibular negative" and that, while Hurtado suffered a hearing loss "established by audiometry," "the period of attendment no permit confirma [sic]."[11]   Tr. 427.   Put another way, he could not confirm duration.

Finally, Dr. Fim check-list communicated that, as of "01/24/2011," Hurtado met "Medical Listing 2.07."   Tr. 425.   But that's not acceptable

---

[11]   The doctor evidently is Brazilian, and much of what he generated is in that language, but he chose to supply his "SSA findings" in English.   Relatedly, the *Bradley* court noted an important distinction that has evolved in this area of law:

> Additionally, the ALJ has a duty to fully and fairly develop the record. *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir. 1990). Under the current law, the ALJ is not obligated to recontact physicians if he finds the evidence to be inadequate. This action is now discretionary. *See* 20 C.F.R. § 404.1520b(c)(1) (stating that the ALJ "*may* [not must] recontact your treating physician, psychologist, or other medical source" to resolve inconsistencies or insufficiencies in the record) (emphasis added).

*Bradley*, 2015 WL 6746782 at * 2.   The Court thus rejects Hurtado's argument (doc. 10 at 9-10) that the ALJ should have pursued translation services.   The ALJ may have an "inquisitional duty" to fully and fairly develop the record, but that only kicks in after the plaintiff supplies the basic building blocks, as evidenced by the case law reminding each claimant that it is his burden to show that he is disabled, and that pointing to various impairments without also showing their effect on his ability to work is legally insufficient.   *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005) ("[T]he mere existence of . . . impairments does not reveal the extent to which they limit . . . ability to work or undermine the ALJ's determination in that regard."); *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)); *Riviere*, 2015 WL 1243243 at * 4 (each claimant "is responsible for providing evidence from which the ALJ can make an RFC determination").

as a medical opinion -- to say that is tantamount to concluding that Hurtado is disabled, which is a finding *reserved* to the Commissioner.[12] The ALJ thus had good cause to reject it not only on that basis, but also on the grounds that other evidence negated it: (a) doctors Corin and Thomas observed a normal gait, intact hearing, and no balancing difficulties; (b) Dr. Bruce G. Borkosky's "normal" psychological assessment, Tr. 54, 382-84; *see also* Tr. 382 (no communications barriers, and Hurtado used no glasses or hearing aids); (c) Dr. Fim himself rendered inconclusive findings on whether Hurtado had a progressive hearing loss -- something Listing 2.07 requires; and (d) Hurtado failed to cooperate, Tr. 57 (ALJ noted that he "failed to submit to a visual consultative examination."). [13]

---

[12] *See Hewitt v. Colvin*, 2015 WL 6560527 at * 3 (M.D. Fla. Oct. 29, 2015) ("Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987)." ); *Samuels v. Colvin*, 2015 WL 7068137 at * 4 (S.D. Ga. Oct. 20, 2015) ("under SSR 96–5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96–5p, 1996 WL 374183, at *1, 2 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(d) & 416.927(d)."); *Hudson v. Heckler,* 755 F.2d 781, 784 (11th Cir. 1985) (the Commissioner may reject unsubstantiated statements from a treating physician).

[13] There are still other medical reports in the record, *see, e.g.*, Tr. 410-424 (Corine Samwel, Ph.D), but they for the most part relate to psychiatric evaluations otherwise

The remainder of plaintiff's arguments on this point travel the same route and otherwise invite the Court to engage in impermissible evidence reweighing.

## B. Credibility Determination

Finally, Hurtado faults the ALJ for making his credibility determination prior to determining Hurtado's RFC,[14] doc. 10 at 13, and for failing "to specify what statements from Plaintiff were not credible or why any particular allegations are not credible." *Id.* at 13.

> As a general rule, "credibility determinations are for the ALJ." *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984). "After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). If the ALJ discredits subjective testimony, he must explicitly and adequately articulate his reasons. *Id.*

*Clyburn v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 892, 894 (11th Cir. 2014); quoted in *Johnson v. Colvin*, 2014 WL 1330687 at * 4 n. 6 (S.D. Ga. Mar. 28, 2014). The *Clyburn* court's analysis provides a useful example

---

unchallenged by plaintiff in advancing his claim (*i.e.*, he is contending that *physical* limitations support his claim).

[14] The Court rejects this as frivolous. As the Commissioner points out, "stating the ultimate conclusion at the beginning of a discussion is common in legal writing." Doc. 11 at 12.

of what suffices for a credibility determination that is based on specific, claimant-testimonial points:

> The ALJ specifically and adequately articulated his reasons for the adverse credibility determination in this case, and substantial evidence supports that determination. The ALJ found inconsistencies in Clyburn's testimony. For example, she testified on direct examination that she could not lift a gallon of milk, but when questioned by the ALJ admitted that she could lift her 26-pound baby, "if she has to." She also testified that she was unable to drive after knee surgery but that she was in a car accident one month after the surgery. She stated that was able to drive even though she was not supposed to be driving, and the ALJ found that her testimony called into question whether Clyburn was ignoring her physicians' advice. The ALJ found that these and other inconsistencies diminished Clyburn's "overall credibility." Although Clyburn attempts to qualify her testimony and rebut the ALJ's interpretation of it, the record establishes that substantial evidence supports the ALJ's credibility determination.

*Clyburn,* 555 F. App'x at 894.

The case law evidences no requirement that each and every testimonial claim be spotlighted by the ALJ as believable or not believable. *See Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir.2011) (substantial evidence supported ALJ's rejection of claimant's pain testimony; among other things, objective medical evidence did not confirm severity of alleged pain arising from that condition); *Solomon v.*

*Comm'r of Soc. Sec.*, 430 F. App'x 853, 854 (11th Cir. 2011) (substantial evidence authorized ALJ to reject claimant's testimony "that pain and fatigue . . . prevented him from resuming his job as a commercial truck driver," as ALJ could properly find that it was contradicted by claimant's own statements and objective medical evidence), cited in *Hammond v. Astrue*, 2012 WL 930341 at *6 (S.D. Ga. Mar. 19, 2012).

In fact, both summary and detailed articulations of credibility choices have been sustained on appeal. *See, e.g.*, *Wilcox v. Comm'r, Soc. Sec. Admin.*, 442 F. App'x 438, 440 (11th Cir. 2011) ("[W]e conclude that the ALJ's credibility finding is supported by substantial evidence and that the ALJ articulated adequate reasons for discrediting Wilcox's subjective testimony. The ALJ found that her impairments reasonably could be expected to produce the alleged symptoms, but that her statements on the intensity, persistence, and limiting effects of the symptoms were not entirely credible. In support of this finding, the ALJ considered Wilcox's testimony together with all of the medical evidence in the record. Thus, we affirm the ALJ's credibility determination.").

Here, the ALJ expressly and comprehensively reviewed the

underlying medical evidence and highlighted the contrast between what the evidence revealed and what Hurtado claimed in his filings and at the hearing. *See, e.g.*, Tr. 58 ("Mr. Hurtado said he had blurred vision, but was able to see and read."); *id.* ("Hearing and speech were normal. Pupils were equal, round and reactive to light and accommodation. Extraocular movements were intact."); *id.* (Hurtado "was able to walk on his heels and on his toes. He was able to squat and get up, and the heel-to-toe test was normal. Cranial nerves were intact. There was no sensory or motor deficit."); *id.* (noting that Hurtado had suffered from obesity but had seen a dietician, lost weight, enjoyed improved A1c (blood sugar) levels and "said he felt better."). It was not necessary for the ALJ to expressly write "claimant said this, but that's not true because X, Y & Z." It is sufficient that he identified Hurtado's testimonial claims, state (which he did) that he disbelieved them, then show -- by citing to competent and substantial record evidence -- *why* he disbelieved them.[15]

---

[15] *See also Crow v. Comm'r, Soc. Sec. Admin.*, 571 F. App'x 802, 807-08 (11th Cir. 2014) (ALJ's determination, in applying "pain standard" to symptoms of claimant, who suffered from polymyositis, that claimant was not credible, was supported by substantial evidence; despite claiming that his generalized pain sometimes prevented him from standing and that it was usually a four or five on a ten-point scale, he did not take any pain medication and was able to manage the pain, and medical records did

A reasonable person, *see Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), could determine that Hurtado is not credible based on the testimonial and record-based inconsistencies that the ALJ cited. *Springer v. Colvin*, 2015 WL 6503700 at * 4 (N.D. Ala. Oct. 28, 2015). As noted above, express and *implied* findings are reviewed here. *Kalishek*, 470 F. App'x at 870 ("The ALJ's finding as to whether a claimant meets a listed impairment may be implied from the record. *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986). Furthermore, while the ALJ must consider the Listings in making [his] disability determination, 'it is not required that the [ALJ] mechanically recite the evidence leading to [its] determination.' *Id.*"). Here the ALJ sufficiently explained his reasoning and the record supports it, which is all that's required. *See, e.g., Marley v. Comm'r of Soc. Sec.*, 2015 WL 847376 at * 7 (M.D. Fla. Feb. 26, 2015) ("The ALJ therefore sufficiently explained his reasons for finding Plaintiff less than entirely credible,

---

not support his claims that he could only work a few hours a week and lift less than a half-gallon of milk; nor did they support his allegations of debilitating pain or exhaustion following only 30 minutes of sitting); *Dyer*, 395 F.3d at 1210-11 (affirming ALJ's adverse credibility finding where doctors noted and plaintiff reported that condition improved with treatment).

and it is not for the Court to reweigh the evidence nor will the Court disturb a clearly articulated credibility finding that is supported by substantial evidence.").

## IV.   CONCLUSION

The ALJ's conclusion that plaintiff Juan Miguel Hurtado Sessarego "has not been under a disability" (Tr. at 59) therefore should be affirmed and this case **DISMISSED WITH PREJUDICE.**

**SO REPORTED AND RECOMMENDED**, this   20th   day of November, 2015.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA